# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

**BRIAN EDWARD GLICK,**

      **Plaintiff,**

**vs.**                                   **Case No. 1:22cv328-AW-MAF**

**L. J. CORBIN,**
**and J. C. LANIER,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

In October 2023, Defendants filed a motion to dismiss Plaintiff's complaint, ECF No. 30. The pro se Plaintiff filed a response, ECF No. 34, to the motion in December 2023. In April 2024, a Report and Recommendation was entered, ECF No. 35, recommending Defendants' motion be granted. Notably, Plaintiff's response, ECF No. 34, was not considered because it was unsigned.

Subsequently, Plaintiff filed objections to the Report and Recommendation, ECF Nos. 36-37, another memorandum in opposition to the motion to dismiss, ECF No. 38, and a motion requesting leave to

amend his opposition to the motion to dismiss, ECF No. 40.  In retrospect,

Plaintiff should have been given an opportunity to correct the deficiency

with his signature.  Federal Rule of Civil Procedure 11 states that the "court

must strike an unsigned paper unless the omission is promptly corrected

after being called to the attorney's or party's attention."  Fed. R. Civ. P.

11(a).  The matter was called to Plaintiff's attention, but Plaintiff was not

provided an opportunity to correct the problem.  Since Defendants have not

opposed Plaintiff's motion requesting leave to amend, and because

fairness compels consideration of Plaintiff's arguments in response to the

motion to dismiss, Plaintiff's motion to amend was granted and the Report

and Recommendation vacated.  ECF No. 41.

This case has been reviewed de novo.  Plaintiff's complaint, ECF No.

1, Defendants' motion to dismiss, ECF No. 30, and Plaintiff's amended

memorandum in opposition, ECF No. 42, have been reconsidered.

**Plaintiff's Complaint**

Plaintiff sues two prison officials in this § 1983 case - Defendants

Corbin and Lanier.  ECF No. 1.  Plaintiff alleges the Defendants violated

his First Amendment rights by attempting to thwart his efforts to file

grievances, and by retaliating against him for filing grievances. *Id.* at 15.

In general terms, Plaintiff said that Defendant Corbin attempted to

"intimidate him against filing a grievance," and engaged in two retaliatory

actions: having Plaintiff "handcuffed, berated, and beaten for attempting to

reach out to the media" concerning a prior grievance Plaintiff filed, and by

"falsifying" a disciplinary report which caused Plaintiff to be held in

confinement for 26 days and to lose his job assignment as a prison law

clerk. *Id.* Plaintiff said that Defendant Lanier refused to allow him to return

to his position as a law clerk and "vindictively" assigned Plaintiff to work in

food service and inside grounds because of Plaintiff's grievance. *Id.*

More specifically, Plaintiff alleged that in March 2019, Defendant

Corbin called Plaintiff to Corbin's office to confront him about a grievance

he had written concerning "Class A" uniforms. ECF No. 1 at 7. Plaintiff

said that Corbin was threatening and intimidating. *Id.* at 7-8. When

Plaintiff received a response to his grievance a short time later, he

intended to make three copies of it "to send to news media and to

prisoner's rights advocates." ECF No. 1 at 8. After Plaintiff submitted his

copy request, Corbin again confronted Plaintiff. *Id.* at 8-9. During the

second confrontation, "an officer" struck Plaintiff in the back of the head

while Defendant Corbin was "ranting" at Plaintiff. *Id.* at 9. Plaintiff was

then taken to confinement and Corbin said, "We'll figure out why later." *Id.*

On April 8, 2019, Defendant Corbin served Plaintiff a disciplinary report for

"disrespect," claiming Plaintiff cursed at him which, according to Plaintiff,

was "completely false." *Id.* at 9-10. Plaintiff was found guilty of the

disciplinary report [DR], but appealed that decision by filing a formal

grievance. *Id.* at 10. That grievance was approved, the DR expunged

from his record, and Plaintiff was released from confinement. *Id.*

The basis for the claim against Defendant Lanier is that after Plaintiff

was released from confinement, the library supervisor sent a request to

Defendant Lanier, asking that Plaintiff "be allowed to resume his

assignment in the law clerk program." *Id.* at 11. Defendant Lanier told the

library supervisor that Plaintiff had "served 'DC time' for a DR, and so

should not be assigned to the law library." *Id.* Defendant Lanier then

assigned Plaintiff to food service. *Id.*

**Motion to Dismiss**

Defendants move to dismiss Plaintiff's claims for four reasons: (1) that Plaintiff failed to exhaust his administrative remedies; (2) the complaint fails to state a First Amendment retaliation claim; (3) Plaintiff is not entitled to compensatory damages; and (4) Plaintiff is not entitled to punitive damages.  ECF No. 30 at 6-25.[1]  In response, Plaintiff agrees that exhaustion is required, but contends that he did exhaust his claims against both Defendants.  ECF No. 42 at 1-7.  Plaintiff also states that his complaint sufficiently alleges First Amendment claims against both Defendants, *see id.* at 7-15, that he is entitled to compensatory damages, and also entitled to punitive damages.  ECF No. 42 at 15-25.  The issue of exhaustion has been considered first.

**Standard of Review - Exhaustion**

In enacting the Prison Litigation Reform Act, Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in

---

[1] Because the prior Report and Recommendation concluded that Plaintiff had not exhausted administrative remedies, only that dispositive basis for dismissal was previously considered.  ECF No. 35.

any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement of § 1997e(a) is mandatory.  <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1324-26 (11th Cir. 1998); <u>Bryant</u>, 530 F.3d at 1374, n.10. Courts lack discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing.  <u>Alexander</u>, 159 F.3d at 1325; *see also* <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S. Ct. 983 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207-08 (11th Cir. 2000).

A prisoner must comply with the process set forth and established by the State's grievance procedures.  *See* <u>Miller v. Tanner</u>, 196 F.3d 1190, 1193 (11th Cir. 1999).  The Supreme Court has held that § 1997e(a) of the PLRA requires "proper exhaustion."  <u>Woodford v. Ngo</u>, 548 U.S. 81, 93, 126 S. Ct. 2378, 2387 (2006) (concluding that "proper exhaustion" means complying with the specific prison grievance requirements, not judicially

imposed requirements); *see also* <u>Parzyck v. Prison Health Servs., Inc.</u>, 627 F.3d 1215, 1217-18 (11th Cir. 2010) (quoting <u>Jones</u>, 549 U.S. at 218, 127 S. Ct. 910 ("Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust' ")).

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008) (cited in <u>Turner v. Burnside</u>, 541 F.3d 1077, 1082 (11th Cir. 2008)).  Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." <u>Bryant</u>, 530 F.3d at 1374 (cited in <u>Turner</u>, 541 F.3d at 1082).

A "two-step process" is used to evaluate an exhaustion defense. <u>Turner</u>, 541 F.3d at 1082.  "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id.*  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* (citing to <u>Bryant</u>, 530 F.3d at 1373-74).  "If the complaint is not subject to

dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373–74, 1376).[2]

The burden of proof for evaluating an exhaustion defense rests with the Defendant. Jones v. Bock, 549 U.S. 199, 127 S. Ct. 910, 921, 166 L. Ed. 2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints"); Turner, 541 F.3d at 1082-83. To the degree Defendants' motion could be construed as arguing that "Plaintiff is required to demonstrate that all . . . administrative remedies have been exhausted," ECF No. 30 at 6, that argument must be rejected. Plaintiff is not required to present factual allegations concerning exhaustion; the Supreme Court has made clear that "failure to exhaust is an affirmative defense under the PLRA." Jones, 549 U.S. at 216, 127 S. Ct. at 921.

---

[2] "Where exhaustion . . . is treated as a matter in abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376.

**The Exhaustion Issue**

Defendants argue that Plaintiff did not exhaust administrative remedies for several reasons. First, Defendants point out that Plaintiff filed an informal grievance regarding the issues in this case. ECF No. 30 at 8. That informal grievance is relevant because Plaintiff complained about his work assignment; however, Defendants "argue that Plaintiff did not properly grieve the work assignment as retaliatory" such that an investigation would consider that issue. *Id.* (citing to Ex. C).

Exhibit C[3] is an informal grievance dated May 7, 2019. ECF No. 30-3. Plaintiff said his grievance was regarding Defendant Lanier's "refusing to allow" Plaintiff to resume his job assignment in the law library. *Id.* Plaintiff indicated the basis for the refusal was because of a DR, but Plaintiff said it had been expunged from his record and he believed it "was a simple misunderstanding." ECF No. 30-3. He requested permission to "resume [his] job assignment in the law library." *Id.*

A prison official responded to that informal grievance on the merits, informing Plaintiff that his job assignment was "in compliance with all the

---

[3] Plaintiff did not submit any exhibits. Therefore, all exhibits references are those which were attached to the motion to dismiss, ECF No. 30.

laws, rules, policies, and manuals per Mr. Lanier." *Id.*  Plaintiff was further

told that job assignments do not have to "be done based on an inmate's

request." *Id.*  The informal grievance was denied on May 8, 2019.  *Id.*

Plaintiff then appealed the denial of his informal grievance by filing a

formal grievance which was received in the Assistant Warden's office on

May 9, 2019.  ECF No. 30-4 at 3 (Ex. D).  Plaintiff said he was appealing

the denial of his informal grievance because it failed to address his

complaint - "that Mr. Lanier . . . told the library supervisor" that Plaintiff

"was prohibited from working in the law library due to [his] recent DR, when

that DR was expunged from [Plaintiff's] record prior to [Plaintiff] being

released from confinement." *Id.*  Plaintiff complained that holding an

expunged DR against him smelled "of vindictiveness for [his] exercising

[his] rights." *Id.*  He asked to be permitted to resume working in the library

"as requested by the library supervisor." *Id.*

Plaintiff's formal grievance was received, assigned grievance log #

1905-223-029, and a response mailed to Plaintiff on May 28, 2019.  ECF

No. 30-4 at 2.  Plaintiff was informed that Mr. Lanier had been interviewed

and he denied telling the supervisor that Plaintiff could not return to his

position because of the DR.  ECF No. 30-4 at 2.  Mr. Lanier also said there

was "nothing in the manual" that would prevent doing so, but that after he

had a conversation with the library supervisor, "it was decided" that Plaintiff

should be assigned to work in food service instead of the library.  *Id.*

In denying Plaintiff's grievance, the response made the following

notable point: "Mr. Lanier states that he conducts himself in a professional

manner at all times and is a professional and skilled in the performance of

his duties and governed by a code of ethics that demand integrity in word

and deed."  *Id.*  Such a statement is an obvious response to Plaintiff's

assertion that the job change was vindictive.  That is notable because

Defendants' motion to dismiss argues that Plaintiff's grievance was about a

work reassignment; they claim "that Plaintiff did not properly grieve the

work assignment as retaliatory for investigation" because Plaintiff initially

said in his informal grievance that he thought this was "a simple

misunderstanding."  ECF No. 30 at 8.  In response, Plaintiff says that he

initially believed it was a misunderstanding, but after receiving the

response to his informal grievance, "it became apparent that there was no

such misunderstanding - Defendant Lanier knew exactly what he was doing." ECF No. 42 at 3.

Moreover, Plaintiff argues that after the formal grievance was denied, he "properly filed an appeal to the Office of the Secretary as required by the Florida Administrative Code." ECF No. 42 at 6. Plaintiff points to Defendants' Exhibit G which shows that Plaintiff submitted a grievance appeal on May 30, 2019. ECF No. 30-7 at 4. He stated that he was appealing the denial of his "formal grievance because [his] complaint was not adequately investigated." *Id.* Plaintiff complained that "Lanier was the DR hearing team chairman who found" him guilty of a DR, but the DR had been expunged. *Id.* Plaintiff said the library supervisor requested Plaintiff be able to resume working in the library, but "Lanier denied that request." *Id.* Plaintiff reported that the supervisor had told him that Lanier said he served time in disciplinary confinement for the DR and "should not go back to the law library." *Id.* Plaintiff complained that the supervisor was not interviewed to verify the events, and he requested permission to resume working in the law library because "the evidence of vindictiveness" was "prevailing." *Id.*

Plaintiff's appeal was addressed on the merits, but denied on July 9, 2019. ECF No. 30-7 at 3. The Secretary's representative informed Plaintiff that his appeal had been evaluated, but advised him that inmates "may be assigned to any job or program in which they are capable of fulfilling . . . ." *Id.* Because "there is no inherent right to any job assignment by any inmate," Plaintiff's appeal was denied. ECF No. 30-7 at 3.

The Department of Corrections has a grievance process to provide inmates "with the opportunity of having a grievance heard and considered." FLA. ADMIN. CODE R. 33-103.001(1). Grievance procedures generally require an inmate to proceed through a three-step grievance process: filing an informal grievance, a formal grievance, and a grievance appeal.

It is true that some grievances may be filed initially as a formal grievance, "by-passing the informal grievance step." Fla. Admin. Code R. 33-103.006(3). Included among the types of grievances which can by-pass the informal grievance step are grievances of a disciplinary action and reprisal. Fla. Admin. Code R. 33-103.006(3)(b),(c). When filing a bypass grievance concerning reprisal, inmates are required to "clearly state their

reasons for by-passing the informal grievance step and shall state at the beginning of Part A of Form DC1-303, Request for Administrative Remedy or Appeal, the subject of the grievance." Fla. Admin. Code R. 33-103.006(4). "Failure to do so and failure to justify filing directly shall result in the formal grievance being returned without action to the inmate with the reasons for the return specified." Fla. Admin. Code R. 33-103.006(4).

In this case, Plaintiff did not bypass the informal grievance step of the process, he filed an informal grievance. Thus, Plaintiff was not required to "clearly state" reasons for by-passing the first step in the grievance process, nor was he required to identify "the subject of the grievance."

Furthermore, the requirements for submitting an informal grievance require only that inmates ensure "the form is legible," accurately state the facts, and address "only one issue or complaint." FLA. ADMIN. CODE R. 33-103.005(2)(b)2. Plaintiff did so; his informal grievance complained about one issue - his work reassignment. It is true that his formal grievance added an additional contention - that the reason his work assignment was changed was due to "vindictiveness" - but that did not alter the issue raised in this complaint - his work assignment had been changed. Defendants

argue that this was insufficient to alert prison officials to investigate his claim of retaliation "such that an investigation would consider that issue," ECF No. 30 at 8, but that argument should be rejected.  Plaintiff's formal grievance and grievance appeals specifically pointed to Plaintiff's belief that "vindictiveness" was behind the job change, and prison officials addressed Plaintiff's grievances on the merits.

A claim that a prison official has been vindictive is the same as claiming retaliation or reprisal.  Often times, pro se litigants are not artful in their language; but in this case, an assertion of vindictiveness put prison officials squarely on notice that Plaintiff believed he had suffered reprisal or, in other words, an act of retaliation.  Plaintiff was clearly claiming that Defendant was changing his job assignment because he had asserted his rights.

Further, the grievance procedures do not mandate "a particular level of factual specificity for inmates' grievances," instead requiring only that facts be accurately stated and only one issue or complaint be addressed. *See* Parzyck v. Prison Health Servs., Inc., 627 F.3d 1215, 1219 (11th Cir. 2010) ("the contents of grievances are that they must accurately state the

facts and 'address only one issue or complaint'"). Plaintiff did so. Plaintiff's issue was with his prison work reassignment, and he alerted prison officials to his belief that the job change was due to vindictiveness.

Courts have held that "'[a] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought' and gives prison officials an opportunity to resolve it." Diamond, 131 F. Supp. 3d at 1361-62 (citing to Chandler v. Crosby, 379 F.3d 1278, 1287 (11th Cir. 2004) (explaining that "the purpose of administrative exhaustion . . . "is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues") (quoting Griffin v. Carlin, 755 F.2d 1516, 1531 (11th Cir. 1985))); see also Johnson v. Lewis, No. 516CV00453TESMSH, 2024 WL 758083, at *5 (M.D. Ga. Feb. 23, 2024), motion to certify appeal denied, No. 516CV00453TESMSH, 2024 WL 873533 (M.D. Ga. Feb. 29, 2024) (noting the purpose of "exhaustion is to alert a prison or a prison official of alleged wrongdoing so that there's an opportunity to redress the issue without being hauled into federal court"); Manzo v. Courtney, No. 3:19CV3357-LC-HTC, 2020 WL 4721288, at *3 (N.D. Fla. July 10, 2020), report and recommendation adopted, No.

3:19CV3357-LAC-HTC, 2020 WL 4698804 (N.D. Fla. Aug. 13, 2020) (citing

to <u>Harvard v. Inch</u>, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019), for the

proposition that a "grievance suffices if it alerts the prison to the nature of

the wrong for which redress is sought"). Plaintiff's formal grievance and

grievance appeal presented a "vindictiveness" *argument* concerning his

work assignment *issue* to prison officials, and they had the opportunity to

address it before this case was filed.

This was not a second or additional issue, and that finding is

supported by the fact that the Department's rules limit inmates to

presenting one issue in a grievance. If prison officials believed that Plaintiff

was attempting to raise a second issue of reprisal in a grievance about a

work assignment, they could have refused to address the grievance and it

would have been "returned" without action. FLA. ADMIN. CODE R. 33-

103.006(6). Similarly, if officials believed that Plaintiff was attempting to

raise a new issue in a formal grievance that was not first submitted in an

informal grievance, they could, and would, have "returned" the formal

grievance without action. Plaintiff's claim against Defendant Lanier should

not be dismissed for failure to exhaust.

Defendants also contend that Plaintiff did not exhaust administrative remedies pertaining to Plaintiff's claims against Defendant Corbin which are based on different facts - that Corbin threatened Plaintiff over a grievance he had written concerning "Class A" uniforms, had another officer hit Plaintiff in the back of the head, and issued Plaintiff a false and retaliatory disciplinary report.  ECF No. 30 at 9.  Plaintiff's complaint alleged that he appealed the DR in a formal grievance, which was approved, the DR expunged, and Plaintiff was released from confinement. ECF No. 1 at 10.

Defendants provided a copy of that grievance which Plaintiff submitted on April 18, 2019.  ECF No. 30-5 at 2.  Plaintiff said he was appealing the "DR for disrespect" because he "was denied due process and because the facts do not support the charge."  *Id.*  Plaintiff said he requested staff assistance but was not sufficiently provided such,[4] and he was unable to determine the identity of witnesses who were "present at the time of the" alleged disrespect.  *Id.*  He also claimed that he sought to call witnesses to show that Defendant Corbin set him up in reprisal for a

---

[4] Plaintiff said he was told that " 'reading the DR' was the only assistance available" from staff.  ECF No. 30-5 at 2.

grievance he had filed, which Plaintiff said was why he "called the grievance log." *Id.* Plaintiff claimed the DR was false and the "truth of the matter [was] that [he] was locked up for reprisal over a grievance." *Id.* at 3.

Plaintiff further said Corbin had a "ten minute intimidation session" with him one day about writing grievances, and on another day, Corbin had Plaintiff placed in handcuffs and brought to Corbin's office where he endured "10 more minutes of verbal abuse" and his property was packed. *Id.* Plaintiff said it was "obvious" that Corbin already had decided that Plaintiff was going to confinement because the DR claimed Plaintiff was there to be counseled about a minor rule violations but "no such violation was ever recorded on" Plaintiff's "contact card" and Plaintiff was already in handcuffs. *Id.* Plaintiff's grievance also complained of other procedural problems with the disciplinary hearing, and he said the "real reason" he was "handcuffed and brought to the OIC office" was because of the grievance. *Id.* at 4.

Plaintiff's appeal was "reviewed and evaluated." ECF No. 30-5 at 1 (Ex. E). The response provided to Plaintiff informed him that the DR was "being overturned and expunged" based on "a technical error." *Id.*

Therefore, his grievance was "approved." *Id.* Because Plaintiff's appeal

was approved, he "was not required to file" anything further. Perea v.

Smith, No. 5:22-CV-156-TKW-MJF, 2024 WL 559260, at *3 (N.D. Fla. Jan.

17, 2024), report and recommendation adopted, No. 5:22-CV-156-TKW-

MJF, 2024 WL 554153 (N.D. Fla. Feb. 12, 2024) (noting the prisoner "was

not required to file a formal grievance or appeal, because his informal

grievances were approved") (citing to Williams v. Dep't of Corr., 678 F.

App'x 877, 881 (11th Cir. 2017); Harvard v. Inch, 411 F. Supp. 3d 1220,

1248 (N.D. Fla. 2019); and Whatley v. Smith, 898 F.3d 1072, 1085 n.60

(11th Cir. 2018)).

Defendants have not identified any part of the Department's "inmate

grievance procedure—or inmate handbook—that requires an inmate to

appeal from the approval of his grievance." Perea, 2024 WL 559260, at *3.

Indeed, there was nothing more for Plaintiff to do.

Plaintiff has argued that the facts he alleged in his formal grievance

"encompass[ed] the retaliatory acts alleged in the Complaint" against

Defendant Corbin. ECF No. 42 at 5. Indeed, his grievance did encompass

both occasions when he met with Corbin. Plaintiff presented the issue of

the Defendant's threats and intimidation for writing a grievance as well as

the retaliatory disciplinary report to prison officials through the grievance

process.  The motion to dismiss should be denied on the issue of

exhaustion; Plaintiff exhausted administrative remedies as to all claims.

**First Amendment Claims**

Defendants also argue that Plaintiff's complaint fails to assert proper

First Amendment claims against both Defendants.  ECF No. 30 at 10.   The

issue on whether a complaint should be dismissed pursuant to Fed. R. Civ.

P. 12(b)(6) for failing to state a claim upon which relief can be granted is

whether the plaintiff has alleged enough plausible facts to support the

claim stated.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct.

1955, 167 L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.

662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Twombly,

550 U.S. at 570, 127 S. Ct. 1955).[5]  The pleading standard is not

---

[5] The complaint's allegations must be accepted as true when ruling on a motion
to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992),
*cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a
judge's disbelief of a complaint's factual allegations."  Twombly, 127 S. Ct. at 1965,
(quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S. Ct. 1827 (1989)).

heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests. Swierkiewicz v. Sorema, 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions"). Pro se complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986) (citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972)).

One additional principle bears highlighting - a motion to dismiss does not test the truth of a complaint's factual allegations. As noted above, factual allegations, though not legal conclusions, must be "accepted as true," Ashcroft, 556 U.S. at 678, 129 S. Ct. at 1949, even when they are "doubtful in fact." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.

## 1.    Defendant Corbin

The motion to dismiss argues that Plaintiff's interactions with Defendant Corbin are insufficient because "the alleged conduct by Defendant Corbin was not such that would deter a person of ordinary firmness from continuing to engage in the protected conduct." ECF No. 30

at 12.  In support of that argument, Defendants cite <u>Hernandez v. Fla.</u>

<u>Dep't of Corr.</u>, 281 F. App'x 862, 866 (11th Cir. 2008), for the broad

principle that "verbal abuse alone is insufficient to state a constitutional

claim."  ECF No. 30 at 12.  The problem with that argument is that

<u>Hernandez</u> and its progeny were concerned with Eighth and Fourteenth

Amendment claims, not a First Amendment claim.  *See, e.g.,* <u>Phelps v.</u>

<u>Kimbrell</u>, No. 3:23-CV-301-BJD-JBT, 2023 WL 5302557, at *1 (M.D. Fla.

Aug. 17, 2023); <u>Lang v. Aguilar</u>, No. CV419-176, 2020 WL 9848839, at *1

(S.D. Ga. Dec. 22, 2020), report and recommendation adopted, No.

4:19-CV-176, 2021 WL 2229282 (S.D. Ga. June 2, 2021); *see also* <u>Hoever</u>

<u>v. Hampton</u>, No. 4:14CV273-WS/CAS, 2016 WL 3647596, at *3 (N.D. Fla.

May 19, 2016), report and recommendation adopted, No.

4:14CV273-WS/CAS, 2016 WL 3647151 (N.D. Fla. June 28, 2016)

(pointing out that <u>Hernandez</u> does not apply to a First Amendment claim).

Because Plaintiff's claim against Defendant Corbin is based on a violation

of the First Amendment, Defendant's argument that "threats and verbal

abuse" is insufficient to state a constitutional claim should be rejected.

The complaint alleged that Defendant Corbin called Plaintiff into his office to confront Plaintiff about a grievance he had written.[6]  ECF No. 1 at 7.  Plaintiff specifically alleged that Corbin threatened him about writing grievances, "scolded" him for drawing attention to himself, and Plaintiff viewed the incident as an "intimidation session."  *Id.* at 7.  Plaintiff said he was "in fear" because of that incident.  *Id.*  The complaint also alleged that Defendant Corbin had a second encounter with Plaintiff after he requested copies be made of the grievance and response.  *Id.* at 8.  Again, Corbin "confronted Plaintiff 'in an all-out rage.' "  *Id.*  Plaintiff specifically alleged that he was subjected to "a lengthy tirade about grievance writing," and then was hit, placed in confinement, and given a false DR.  *Id.* at 8-9.

To state an actionable First Amendment claim, Plaintiff must show: "(1) that his speech or act was constitutionally protected; (2) that the defendant's retaliatory conduct adversely affected the protected speech; and (3) that there is a causal connection between the retaliatory actions and the adverse effect on speech."  Pittman v. Tucker, 213 F. App'x 867,

---

[6] Plaintiff's grievance complained that officials at Mayo Correctional Institution were enforcing a "no longer existing rule that had required all inmates to remain in their 'Class A' uniforms Monday through Friday from 8:00 am until 5:00 pm."  ECF No. 1 at 7.

870 (11th Cir. 2007) (quoting <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1250-51 (11th Cir. 2005)).  "It is an established principle of constitutional law that an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement."  <u>Smith v. Mosley</u>, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing to <u>Farrow v. West</u>, 320 F.3d 1235, 1248 (11th Cir. 2003)).  Here, Plaintiff's initial grievance was a complaint about the enforcement of a non-existing rule.  Thus, Plaintiff's speech was constitutionally protected under the First Amendment.

Second, Defendants argue that Corbin's interactions with Plaintiff were "not such that would deter a person of ordinary firmness from continuing to engage in the protected conduct."  ECF No. 30 at 11-12.  That argument should also be rejected.  First, Plaintiff specifically alleged in his complaint that he was in fear after the first encounter with Defendant Corbin.  Second, Corbin's follow-up encounter with Plaintiff was even more intimidating than the first because Plaintiff was hit, placed in confinement which limited his privileges, and then given a false DR.[7]  It is easily

---

[7] Plaintiff's allegations must be accepted as true when ruling on a motion to dismiss.  <u>Ashcroft</u>, 556 U.S. at 678, 129 S. Ct. at 1949.

concluded that Plaintiff alleged sufficient facts from which a jury could find that Defendant Corbin's alleged actions "would deter a person of ordinary firmness from the exercise of First Amendment rights."  Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005); *see also* Pittman v. Tucker, 213 F. App'x 867, 870-71 (11th Cir. 2007) (noting that "a plaintiff need not show that his own exercise of First Amendment rights have been chilled" and finding that "threat of physical violence" was sufficient to state a claim).

One additional comment is necessary as to the second element. Defendants argue - as it concerns Plaintiff's second interaction with Defendant Corbin - that Plaintiff does not have "a right to make copies under the First Amendment."  ECF No. 30 at 12.  As Plaintiff notes in his response, he has "never claimed the retaliation was only 'for making copies,'" but instead, the complaint alleged that Defendant Corbin was seeking to retaliate for "attempting to reach out to the media regarding his grievance."  ECF No. 42 at 10 (quoting ECF No. 1 at 15).  In other words, the actions were connected to Plaintiff's exercising his First Amendment right to freedom of speech, not to making copies.

Defendant Corbin also contends that Plaintiff's claim that he kept Plaintiff from retaining his job as a law clerk is insufficient.  ECF No. 30 at 13.  Again, Defendant misunderstands Plaintiff's claim.  Plaintiff alleged that Defendant retaliated by issuing Plaintiff a false DR.  ECF No. 1 at 15. The result of the DR impacted Plaintiff's prison job, but the basis of Plaintiff's claim is the false DR which was issued because Plaintiff was attempting to reach out to the media and communicate about his grievance pursuant to the First Amendment.

The third element of a First Amendment claim is the "causal connection inquiry" and focuses on "whether the defendants were subjectively motivated to" act because of the prisoner's engaging in protected conduct.  Smith, 532 F.3d at 1278.  Plaintiff's allegations sufficiently show a causal connection existed between Plaintiff's use of the grievance process and Defendant Corbin's conduct.  The motion to dismiss should be denied as to this argument.

## 2. Defendant Lanier

The motion to dismiss also argues that Plaintiff's claim against Defendant Lanier is insufficient.  ECF No. 30 at 13-14.  Defendant first

says that "Plaintiff cannot assert a claim under the guise of First Amendment violations, simply because he no longer has the job assignment that he previously enjoyed." *Id.* at 14 (referencing Adams v. James, 784 F.2d. 1077, 1079 (11th Cir. 1986)). As Plaintiff correctly notes, Defendants' argument should be rejected because his "claim is not 'simply' because of a job change, but rather that the job change was done in retaliation for exercising protected speech." ECF No. 4324 at 12.

The Adams case clarified that "[a]n assignment to the job of law clerk does not invest an inmate, or those he assists, with a property interest in his or her continuation as a law clerk." Adams, 784 F.2d at 1079 (noting that a "routine reassignment" from that job does not provide a basis for a "claim in federal court"). However, the more significant aspect of the Adams decision was the recognition that inmates have "constitutional rights independent of any asserted property interest in being law clerks." 784 F.2d at 1079. Thus, while an inmate is not entitled to a job as a law clerk, Adams stands for the proposition that "prison officials may not retaliate against an inmate for exercising a constitutionally protected right." *Id.* at 1082. Put simply, "the 'lack of entitlement to a particular privilege

does not free prison administrators to grant or withhold the privilege for impermissible reasons.'"  *Id.* at 1080 (quoted in <u>Searcy v. Prison Rehab Indus. & Ent, Inc.</u>, 746 F. App'x 790, 795 (11th Cir. 2018)); *see also* <u>Harper v. Admin. Lieutenant</u>, No. 20-11222, 2021 WL 2071974 (11th Cir. May 24, 2021) (reversing dismissal of prisoner's § 1983 complaint and finding he "sufficiently alleged facts that state a prima facie case on his First Amendment retaliation claims" when prisoner was removed from his law clerk position because of a grievance he filed against two prison guards). As with any "at-will" employment position, Defendant was free to remove Plaintiff from his law clerk position, so long as doing so was not based on an improper reason, such as retaliation or the exercise of a person's First Amendment rights.

Second, Defendant argues that Plaintiff has not clearly established "that Defendant Lanier took adverse action against Plaintiff" and has not shown a "causal connection."  ECF No. 30 at 14.  Combined within that argument is the contention that Defendant Lanier lacks the "decision-making authority" to reassign Plaintiff's job.  *Id.*

Plaintiff's complaint alleged that the library supervisor submitted a request to Defendant Lanier to allow Plaintiff "to resume his assignment in the law clerk program."  ECF No. 1 at 11.  That suggests that Defendant Lanier had authority to make the job assignment.

Additionally, Plaintiff's complaint alleged that Lanier is the officer who said "no" to that request and re-assigned Plaintiff to work in food service. *Id.*  Furthermore, Plaintiff alleged that Defendant Lanier was the officer who found him guilty of the allegedly false DR issued by Defendant Corbin. ECF No. 1 at 10.  It was after Plaintiff's grievance successfully overturned the DR that Defendant Lanier refused the request for Plaintiff to resume duties as a law clerk.  Because no other reason was provided for the job reassignment and the prior DR had been expunged, Plaintiff contends that Defendant Lanier's actions were "retaliatory."  *Id.*  Those allegations are sufficient to state a viable claim against Lanier and support finding that making job assignments fell within Lanier's duties.

Furthermore, Plaintiff has pointed out that when responding to Plaintiff's formal grievance about job reassignment, prison officials said that it "is part of [Lanier's] job to work with staff in reassigning inmates to

jobs . . . ."  ECF No. 42 at 13 (citing to ECF No. 30-4 at 2).  Plaintiff's

complaint sufficiently alleged all three elements of a First Amendment

claim and the motion to dismiss on this basis should be rejected.[8]

**Compensatory Damages**

Plaintiff's complaint requested both compensatory and punitive

damages.  ECF No. 1 at 5.  Defendants first argue that Plaintiff is not

entitled to compensatory damages.  ECF No. 30 at 16 (citing 42 U.S.C. §

1997e(e)).  Plaintiff says that he is so entitled because his deteriorating

medical condition was caused by Defendants' retaliatory actions.  ECF No.

42 at 17-19.

"Under the PLRA, a prisoner may not recover monetary damages

(compensatory or punitive) 'for mental or emotional injury suffered while in

custody without a prior showing of physical injury.' "  42 U.S.C. § 1997e(e)

(quoted in Furman v. Warden, 827 F. App'x 927, 933 (11th Cir. 2020)).  In

addition, "to avoid section 1997e(e)'s bar on the recovery of monetary

damages, a prisoner's alleged 'physical injury must be more than de

---

[8] Defendants' disagreement with Plaintiff's allegation that Defendant Lanier is the official who reassigned his job is not a basis to grant a motion to dismiss.  That is because the Court "must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (citations omitted).

minimis, but need not be significant.' " <u>Furman</u>, 827 F. App'x at 933.  The "de minimis" standard generally aligns with the "physical injury analysis" used in Eighth Amendment cases and must exceed a "routine discomfort" threshold.  *Id.*  (citing to <u>Hudson v. McMillian</u>, 503 U.S. 1, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)).

Here, Defendants point out that Plaintiff's allegations of physical injury stem from pre-existing and exacerbated conditions.  For example, Plaintiff said he already had "trouble breathing while sleeping, but the problem became much more serious while in confinement, where he was not given a pillow and was unable to elevate his head."  ECF No. 1 at 9. He said the "lack of sleep and of oxygen while sleeping caused painful headaches and constant drowsiness."  *Id.*  He spent "26 days in confinement, with hardly any sleep during that time, while suffering from debilitating headaches."  *Id.* at 10.  Even after his release from confinement, Plaintiff "continued to have even worse trouble breathing while sleeping, which also continued to cause daytime drowsiness and migraine headaches."  *Id.*  "Some days were so bad that" Plaintiff had "nausea and acute sensitivity" from the headaches.  *Id.*  Moreover,

because of the reassignment to food service, Plaintiff began suffering

increased nerve pain from a bullet lodged behind his ankle which was

made worse by having to stand "on his feet for 10 to 12 hours a day . . . ."

*Id.* at 11.  Plaintiff contends that his "rapidly deteriorating condition was a

direct result of [Defendant] Corbin's retaliatory DR combined with

[Defendant] Lanier's retaliatory job assignment."  *Id.* at 12.

   According to Defendants, Plaintiff's injuries are not the "result of

Defendants' actions and Plaintiff is unable to show any causal connection."

ECF No. 30 at 16.  This argument carries some weight.  As outlined above,

Plaintiff did allege a connection between his injuries and Defendant's

actions, but the connection is indirect and tenuous.  For example, Plaintiff's

breathing issues are not clearly linked to his confinement status but,

instead, were because "he was not given a pillow and was unable to

elevate his head."  ECF No. 1 at 9.  There are no allegations which link the

denial of a pillow to the Defendants and it is not clear that inmates are

unable to request a pillow while in confinement.  Plaintiff said that he "was

finally given a pillow after his release from confinement," but he does not

clearly articulate that Defendants were responsible for denying him use of a pillow.

There is another exception to the causal connection argument as well.  Plaintiff alleged in the complaint that when he was assigned to work in "the pot room," he was "required to stay on his feet for 10 to 12 hours a day, 5 to 6 days a week, as his medical passes had expired."  ECF No. 1 at 12.  The pain behind his ankle increased due to the presence of a bullet still "lodged behind his ankle."  *Id.* at 11-12.  The problem with this injury is that it is not directly linked to Defendants' actions; instead Plaintiff suffered pain because his medical passes expired.  A medical pass is provided by medical staff, and will control the work assigned to an inmate.[9]  The expiration of a pass that limited the amount of time Plaintiff could be required to stand on his feet is not attributable to the Defendants.

Defendants also contend that Plaintiff's aggravated injuries are only "de minimis" which bars his recovery of compensatory damages.  ECF No. 30 at 17.  Specifically, Plaintiff alleged suffering from headaches and

---

[9] Plaintiff said that he was "seen by medical on July 18, 2019, and was then issued passes for insoles, no-prolonged standing, and a walking cane . . . ."  ECF No. 1 at 13.

nausea.  While some federal district courts have differed in considering

whether headaches were de minimis injuries, the Eleventh Circuit has not.

headaches have been deemed to be diminimis injuries by the Eleventh

Circuit.  Quinlan v. Pers. Transp. Servs. Co., 329 F. App'x 246, 249 (11th

Cir. 2009) (complaints "of temporary chest pain, headache, and difficulty

breathing while in the van," as well as periodic back pain were found to "not

surmount section 1997e's bar"); *see, e.g.,* Siskos v. Sec'y, Dep't of Corr.,

No. 4:17-CV-186-RH-GRJ, 2018 WL 2452204, at *8 (N.D. Fla. May 18,

2018), report and recommendation adopted, No. 4:17CV186-RH/GRJ,

2018 WL 2449205 (N.D. Fla. May 31, 2018), aff'd, 817 F. App'x 760 (11th

Cir. 2020) (relying on Quinlan); Ruffin v. McCloud, No. 517CV424-

MTTCHW, 2020 WL 8768251, at *4 (M.D. Ga. Apr. 21, 2020) (referencing

Quinlan); and Muhammad v. Inch, No. 3:18-CV-212-J-25JBT, 2020 WL

13518236, at *9 (M.D. Fla. Mar. 10, 2020) (relying on Quinlan's language

that "none of [the alleged injuries] required immediate medical attention or

evidence physical injury besides discomfort"); Watkins v. Trinity Serv. Grp.

Inc., No. 805-CV-1142T-24MSS, 2006 WL 3408176, at *4 (M.D. Fla. Nov.

27, 2006) (holding that physical injuries such as "diarrhea, vomiting,

cramps, nausea, and head aches from eating spoiled food" were de

minimis); Osterback v. Johnson, No. 2:97-cv-314-FTM-16DNF, 2003 WL

25571396, at *6 (M.D. Fla. June 2, 2003) (PLRA barred compensatory

damages claim where prisoner's allegations consisted of slight weight loss,

nausea, back pain, a sinus condition, appetite loss and headaches"); and

Chatham v. Adcock, 334 F. App'x 281, 284 (11th Cir. 2009) (outlining

injuries which are not "greater than de minimis" and citing to Watkins).  *But

see* Wooden v. Barringer, No. 1:16-CV-378-WTH-GRJ, 2018 WL 6048259,

at *8 (N.D. Fla. Apr. 25, 2018), report and recommendation adopted, No.

1:16CV378-MW- GRJ, 2018 WL 6046460 (N.D. Fla. Nov. 19, 2018)

(finding allegations of lacerations, swelling, persistent numbness, and

recurring migraines were sufficient); Davis v. Daniels, No.

3:20CV5935-MCR-HTC, 2022 WL 19408773, at *7 (N.D. Fla. Dec. 27,

2022), report and recommendation adopted, No. 3:20CV5935-MCR-HTC,

2023 WL 2895729 (N.D. Fla. Apr. 11, 2023) (finding "a question of fact"

existed as to whether Plaintiff's injuries - abrasions to the head, frequent

migraines, and low back pain - were "more than de minimis").  Here,

Plaintiff's injuries do not rise to the level of "greater than de minimis."

These were temporary issues that did not require "immediate medical attention" and should more appropriately be classified as "discomfort" instead of injury.  *See* Quinlan, 329 F. App'x at 249 (citing to Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir.1999), vacated, in part, on other grounds, 216 F.3d 970 (11th Cir. 2000) (en banc) ((explaining that "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society"); *see also* Wooden, 2018 WL 6048259, at *7 (stating that "[d]iscomfort does not equate to physical injury" (citing to Dixon v. Toole, 225 F. App'x 797, 799 (11th Cir. 2007)).  Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e).

Defendants also contend that Plaintiff should not be awarded nominal damages since he did not request them in the complaint.  ECF No. 30 at 17-18.  As a starting point, it is true that Plaintiff did not include a specific request for nominal damages.  *See* ECF No. 1 at 5.

However, it is also true that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."  Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003) (quoted

in <u>Williams v. Brown</u>, 347 F. App'x 429, 436-37 (11th Cir. 2009)).  A request for nominal damages is not barred by § 1997e(e).  <u>Smith v. Allen</u>, 502 F.3d 1255, 1271 (11th Cir. 2007).  Furthermore, "a district court may grant relief to which a plaintiff is entitled even when that relief is not requested in the complaint."  <u>Furman v. Warden</u>, 827 F. App'x 927, 935 (11th Cir. 2020) (citing to Fed. R. Civ. P. 54(c) which provides that "(other than default judgments, '[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings' ").  Plaintiff should not be precluded from obtaining nominal damages should he be successful in this case.

**Punitive Damages**

Finally, Defendants argue that Plaintiff's request for punitive damages is "statutorily barred" by 18 U.S.C. § 3626(a)(1)(A)  ECF No. 30 at 18.  Defendants contend that "punitive damages are never necessary to correct a violation of a Federal right" and, thus, are categorically barred. *Id.* Plaintiff disagrees.  ECF No. 42 at 22.

The statute provides:

Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the

> violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).  The statute defines "prospective relief" as "all relief other than compensatory monetary damages." 18 U.S.C. 3626(g)(7). Furthermore, "the Eleventh Circuit has held that punitive damages are subject to § 3626(a)(1)(A)'s restrictions."  Wright v. Ramos, No. 3:23cv15676-LAC-ZCB, 2024 WL 1558782, at *1 (N.D. Fla. Feb. 8, 2024), report and recommendation adopted, No. 3:23cv15676-LAC-ZCB, 2024 WL 1556361 (N.D. Fla. Apr. 10, 2024) (citing to Johnson v. Breeden, 280 F.3d 1308, 1325 (11th Cir. 2002), abrogated on other grounds by Kingsley v. Hendrickson, 576 U.S. 389, 395 (2015)).

        However, it is unnecessary to determine the issue of punitive damages until liability is established.  Numerous cases have "reached the same conclusion in" resolving motions to dismiss.  Wright, 2024 WL 1558782, at *2 (citing to Watson v. Harris, No. 1:23cv41/AW/ZCB, 2023 WL 9058715, at *2 (N.D. Fla. Dec. 8, 2023) adopted by, 2024 WL 23160

(denying motion to dismiss as to punitive damages claim; <u>Baker v. Rathel</u>, No. 1:23cv3/AW/MJF, 2023 WL 7496224, at *4-5 (N.D. Fla. Oct. 5, 2023) adopted by, 2023 WL 7497491 (same), among others).  Therefore, it is recommended that Defendants' request to dismiss Plaintiff's request for punitive damages be denied without prejudice.  *See* <u>Watson</u>, 2024 WL 23160, at *1 (N.D. Fla. Jan. 2, 2024) (agreeing "that the issue need not be resolved now").

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss, ECF No. 30, Plaintiff's complaint, ECF No. 1, be **GRANTED** in part and **DISMISSED** in part.  The claims should continue against both Defendants, but Plaintiff's request for compensatory damages should be dismissed.  It is also **RECOMMENDED** that Defendants be directed to file an answer to the complaint, and this case be **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on August 7, 2024.


S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**